**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

MARLON SALO HERNANDEZ CARRANZA,

     *Plaintiff*,

     v.

GLORIA MARISOL RAMIREZ, *et al*.,

     *Defendants*.

Civil Action No. 8:20-02687-PWG

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR ATTORNEY'S FEES AND COSTS**

Plaintiff moves for an award of attorneys' fees and costs against the three Defendants who are in default: Gloria Ramirez, Fidel Granados, and L&R General Services LLC (collectively "L&R Defendants"). Plaintiff filed this lawsuit on September 16, 2020, alleging violations of the FLSA, the MWHL and the MWPCL, by the L&R Defendants. Plaintiff also sued a vicariously liable general contractor ("Bainbridge II"), pursuant to Section 3-507.2 of the MWPCL. Plaintiff sought his unpaid wages for 154 work hours, double liquidated damages under the MWPCL, and his attorneys' fees and costs. Plaintiff served the L&R Defendants, and after they failed to respond, the Clerk entered an order of default against them on December 4, 2020. Plaintiff has since agreed to a partial settlement of his claims with defendant Bainbridge only and voluntarily dismissed Bainbridge II with prejudice on May 19, 2021. On January 26, 2022, the Court granted Plaintiffs' motion for entry of default judgment against the L&R Defendants and awarded Plaintiff unpaid wages and double liquidated damages totaling $9,234.00, less any sums previously received from Defendant Bainbridge, plus reasonable attorneys' fees and costs.[1] ECF No. 60 at 8 n. 6. Plaintiff

---

[1] Any amounts paid by Bainbridge II to Plaintiff as part of the settlement are confidential pursuant to the terms of the Parties' settlement agreement. As Plaintiff did when he filed his motion for default judgment, he will a supplemental affidavit of Suvita Melehy (Ex. H), under seal, to

1

now moves, as the prevailing party in this action, for an award of attorneys' fees and costs against the L&R Defendants.

Plaintiff's counsel has reviewed all the billing records in this matter to delete excessive, redundant, or duplicative entries in the exercise of billing judgment, and Plaintiff now seeks judgment against Defendants, jointly and severally, in the amount of $28,674.58, representing $27,763.00 in attorneys' fees and $911.58 in costs, less any sums previously paid by the Bainbridge Defendant. The amount of attorneys' fees and costs received from Bainbridge will be set forth in a separate affidavit which will be filed under seal to maintain the confidentiality of the terms of the settlement between Bainbridge and Plaintiff. Plaintiff seeks attorneys' fees for a total of 72.4 hours of time, this is after excising 9.1 hours of time from the time records in the exercise of billing judgment, and then further reducing certain time entries (11 total hours) to "$0.00". In support of his request, Plaintiff relies upon the following documents: (1) Time Records of Melehy & Associates LLC (Ex. A); (2) Decl. of Omar Vincent Melehy, Esquire (Ex. B); (3) Decl. of Suvita Melehy, Esquire (Ex. C); (4) Decl. of Michal Shinnar, Esquire (Ex. D); (5) Plt.'s Retainer Agreement (Ex. E); (6) Summary of Costs and Backups (Ex. F); and (7) Aguilar Decl. (Ex. G).

## PROCEDURAL HISTORY

Plaintiff filed this case on September 16, 2020. ECF No. 1. Plaintiff alleged violations of the Fair Labor Standards Act ("FLSA"), the Maryland Wage and Hour Law ("MWHL"), and the Maryland Wage Payment and Collection Law ("MWPCL"), arising out of the L&R Defendants' collective failure to pay him any wages for 154 hours he worked for them as a construction laborer. Plaintiff also sued a vicariously liable general contractor (originally NVR, Inc. and then

---

inform the Court of the amount of attorneys' fees and costs Plaintiff has already received from Bainbridge II as part of the partial settlement entered into by the Plaintiff.

Bainbridge) pursuant to Section 3-507.2 of the MWPCL. ECF No. 1. The L&R Defendants ignored the lawsuit after being served and the Clerk entered a default against them on December 4, 2020. ECF Nos. 30-32. Plaintiff then proceeded against the general contractor. However, the construction project Plaintiff worked on was structured in such a way that it made it very difficult to discern who the actual general contractor was. Shortly after he filed the case, Plaintiff learned, through further investigation, that NVR, Inc. – the entity he initially named as the general contractor – was not the general contractor on the job he worked on. Instead, NVR, Inc. told Plaintiff that an entity called "Bainbridge" as the general contractor. Plaintiff subsequently learned that there are several different Bainbridge subsidiary companies that were associated with his project. Based on the records available to him, Plaintiff sued "BVT-Bainbridge Lake Linganore Owner LLP" ("Bainbridge I") the entity that he determined to be the general contractor. *See* Amended Complaint ECF No. 4. After Bainbridge I was served, it moved to dismiss, arguing it was not a general contractor but the owner of the project. ECF No. 12.  However, Bainbridge I refused, initially, to disclose the general contractor and objected to Plaintiff's proposed discovery seeking this information. Suvita Melehy Decl. ¶ 6, Ex. C. Ultimately, the Court intervened, and ordered disclosure, (*see* ECF No. 19) Plaintiff was finally able to join the correct entity "Bainbridge Mid-Atlantic Construction LLC") ("Bainbridge II"). *See* Second Amended Complaint, ECF No. 33. After intensive negotiations, Plaintiff entered a settlement with Bainbridge I as to part of his claim for wages and attorneys' fees and costs. ECF No. 52.  The Parties agreed to keep the terms of the settlement confidential. After Bainbridge II complied with its obligations under the settlement agreement, Plaintiff dismissed it with prejudice on May 19, 2021. ECF No. 56.

**ARGUMENT**

**I.      PLAINTIFF, AS THE PREVAILING PARTY, IS ENTITLED TO AN AWARD OF REASONABLE ATTORNEYS' FEES AND COSTS.**

Under the FLSA, a prevailing plaintiff is entitled to recover "a reasonable attorney's fee[,]" as well as costs, from a defendant. 29 U.S.C. § 216(b). Similarly, an employer who violates the MWHL is liable for "reasonable counsel fees and other costs." MD. CODE ANN., LAB. & EMPL. §§ 3-427(d). The MWPCL permits the Court to award attorneys' fees at its discretion. *Sankoh v. Gold St. Capital Fund*, Civil Action No. PX 17-2276, 2018 U.S. Dist. LEXIS 59568, at *13 (D. Md. 2018). However, the Court of Appeals has recognized that the Maryland "legislature intended that discretion to be exercised liberally in favor of awarding fees … in appropriate cases." *Friolo v. Frankel,* 373 Md. 501, 515, 819 A.2d 354, 362 (2003).

Plaintiff is the prevailing party under all three statutes he sued under, because he obtained a judgment for the full measure of relief sought in the Complaint (ECF No. 1, as amended), including his unpaid straight and overtime wages of $3,078.00, and liquidated damages equal to double this amount or $6,156.00. ECF No. 60. But for Plaintiff's efforts in filing this lawsuit and vigorously prosecuting it to conclusion, Plaintiff would have lost the ability to recover any part of his lost wages.  Moreover, Plaintiff's recovery is exclusive of attorney's fees and costs, which will be awarded against the L&R Defendants separately by the Court. Plaintiff's status as a prevailing party is unassailable.

**II.     GOVERNING LAW – LODESTAR ANALYSIS.**

The Fourth Circuit utilizes the multi-step "Lodestar Analysis" when deciding the amount of attorney's fees to award a successful Plaintiff in cases brought under the FLSA, and the MWHL. *See Broccoli v. Echostar Commc'ns Corp.*, 229 F.R.D. 506, 513 (D. Md. 2005); *Friolo v. Frankel*,

373 Md. 501, 504-05 (D. Md. 2003). There are three steps to the analysis: (1) determine the Lodestar figure by multiplying the number of hours reasonably expended by a reasonable hourly rate; (2) deduct fees for unsuccessful claims; and (3) award some percentage of the remaining amount based on the degree of success attained by the Plaintiff. *See Randolph v. PowerComm Constr., Inc.*, 780 F. App'x 16, 22 (4th Cir. 2019); *McAffee v. Boczar*, 738, F.3d 81, 88 (4th Cir. 2014). Plaintiff was successful on all of his claims, as he obtained a judgment for all the unpaid wages owe to him and the maximum liquidated damages (double) under the MWPCL, as well as a separate award (in an amount to be determined) of reasonable attorney's fees and costs. *See* ECF No. 60. Therefore, no reduction is warranted based on a lack of success. The only step left in the Lodestar analysis is for the Court to determine the Lodestar.

### A.  LODESTAR CALCULATION.

The Supreme Court has held that a "strong presumption" exists that the Lodestar is a reasonable fee and this presumption is overcome only "in those rare circumstances where the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee." *Perdue v. Kenny A. ex rel. Winn,* 559 U.S. 542, 554 (2010)); *McAfee v. Boczar*, 738 F.3d 81, 88 (4th Cir. 2013), as amended (Jan. 23, 2014). When considering both the reasonableness of the hours expended and the hourly rate, Courts in this District are to be guided, in their analysis by twelve factors set forth in *Johnson v. Georgia Highway Express, Inc*., 488 F.2d 714, 717-19 (5th Cir. 1974) (the "*Johnson* Factors"), which are:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which

the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Robinson v. Equifax Info. Services, LLC*, 560 F.3d 235, 244 (4th Cir. 2009).

"[T]he court considers the *Johnson* factors in conjunction with the lodestar methodology and, to the extent that any of these factors already has been incorporated into the lodestar analysis, [it does] not consider that factor a second time." *Ford v. Karpathoes, Inc.*, CIV.A. ELH-14-00824, 2015 WL 736809, at *5 (D. Md. 2015) (internal quotations and citations omitted). Application of the *Johnson* Factors, leads to the conclusion that Plaintiff is entitled to the attorney's fees sought herein. Plaintiff's counsel litigated this case diligently and efficiently, delegating tasks to lower-level billing professionals, where appropriate, to reduce overall attorneys' fees. Plaintiff's counsel also made voluntary reductions to the time spent in the exercise of billing judgment to delete excessive, redundant or duplicative time entries. The hourly rates sought ($625.00 per hour for Omar Vincent Melehy, $575.00 per hour for Suvita Melehy, $350.00 per hour for Andrew Balashov, and $180.00 per hour for paralegals and paraprofessionals), are Melehy & Associates LLC's current normal and customary rates, and below the market rates for legal professionals who handle comparable cases in this District.

### 1. The Time and Labor Expended.

The Firm kept contemporaneous time records in this case. Ex. B, ¶23. Those records are attached hereto as Exhibit A. Ms. Melehy reviewed those records prior to submitting them to the Court and used billing judgment to delete time that was redundant, excessive, clerical or where two lawyers billed for the same meeting or reviewing the same document. Ex. C ¶7. First, Ms. Melehy deleted certain time entries, including time which was administrative, or otherwise not compensable. *Id*. These entries do not appear on the time records (Ex. A) but are attached to her affidavit. *Id*. The total value of this deleted time (9.1 hours) is $1,800.50. *Id*.  Then, Ms. Melehy

"no-charged" certain time entries (11 hours) in the exercise of billing judgment. *Id*. These entries appear on the time records but have a "$0.00" value in the total column. *Id*. The "no-charge" time has a value of $2,184.00. The total value of the deleted and "no-charge" time, (20.1 hours total), is $3,984.50.

Work in this case falls into one of the following categories:

### a.   Factual Investigation – 4.8 Hours - $1,672.00.

Plaintiff's counsel seeks compensation for 4.8 hours spent investigating Plaintiff's claims. The work focused on identifying the vicariously liable general contractor on the job that Plaintiff worked on. As part of this process, Plaintiff interviewed the client, researched all available public records, including combing through dozens of building permits associated with the project and spoke to the property manager for the management company in charge of leasing the individual apartments on the property. *See* Ex. A. This process was difficult and time consuming. Information about the general contractor was not readily available to Plaintiff, who was employed by the L&R Defendants as an unskilled laborer who would not be privy to such information. Even Bainbridge I, the owner of the property, refused to disclose the identity of the general contractor once it was joined in the lawsuit, and only did so when ordered by the Court. Ex. C ¶7. In the end, Plaintiff's dogged pursuit of this information paid off, as he was able to reach a partial settlement of his claim with Bainbridge II, after he identified it as the general contractor and named it in the lawsuit.

Plaintiff also had to obtain records from the Frederick County Sherriff's office. This was necessary in order to investigate the merits of a threatened counterclaim asserted by one of the L&R Defendants – Fidel Granados – during a telephone conversation with Plaintiff's counsel. *See* Ex. C ¶ 8. Granados called Plaintiff's counsel to inquire about the lawsuit and stated that L&R General Contractors was going to file a counterclaim against Plaintiff because he allegedly stole

equipment from the job. *Id*. Plaintiff vehemently denied the allegation. Id. Plaintiff agreed there was a dispute between the Parties, which arose from his not having been paid any wages, but stated it was resolved in the presence of the Frederick County Sheriff. *Id*. To corroborate this, Plaintiff obtained a copy of the incident report from the Frederick County Sheriff's office. *Id*. The time spent in this category is reasonable. A large part of the work was done by paralegals Maria Aguilar and Christopher Grau, whose hourly billing rate is lower than that of Plaintiff's counsel. Ex. A. Andrew Balashov, an associate attorney, then oversaw the work and did some of it himself. *Id*. Therefore, the Court should award the total amount sought.

    **b.**      **Pleadings – 5.8 Hours - $2,360.00**

Plaintiff seeks attorneys' fees for 5.8 hours spent drafting the initial complaint, amended complaint, and the second amended complaint. Ex. A. The initial Complaint included a detailed calculation of the damages owed to Plaintiff thus putting the Defendants on notice as to the precise amount Plaintiff was seeking, allowing them to evaluate the case and decide whether to try to settle early or engage in discovery. *See* ECF No. 1. The work was performed primarily by Andrew Balashov, an associate attorney at the Firm, and to a lesser extent by Omar Vincent Melehy, Plaintiff's co-counsel, who oversaw and reviewed the work, making revisions where necessary. Ex. A. The total time spent, 5.8 hours, is reasonable. *See Manna v. Johnny's Pizza, Inc.*, CIV. CCB-13-721, 2014 WL 794357, at *4 (D. Md. 2014) (stating that 12.10 hours dedicated to researching and drafting the complaint were reasonable); *Shattuck v. Harmon Heating and Air Conditioning, LLC*, 18-CV-1507, 2019 WL 3202507, at *2 (E.D. Pa. 2019) (25.56 hours spent investigating and drafting an 8-count complaint in wage case was reasonable).

Accordingly, the Court should award the full amount sought.

**c.** **Discovery – 4 Hours - $1,422.50**

Plaintiff seeks attorneys' fees for 4 hours expended on discovery related tasks. Ex. A. Specifically, Plaintiff prepared a request to the Court to file a motion to propound limited discovery which would allow Plaintiff to identify and joint as a defendant the vicariously liable general contractor. *See* Ex. A. This work was necessary and reasonable because after Bainbridge I took the position the position that it was not the general contractor, Plaintiff asked their counsel who the general was, and they initially refused to provide this information Plaintiff. Ex. C ¶ 7. Thereafter, Plaintiff began preparing a motion to propound limited discovery to Bainbridge I to obtain the information about who the general contractor was. Plaintiff needed leave because the scheduling order had not been entered by that time and he would not propound discovery absent the Court's permission. Narrow discovery directed to Bainbridge I, would have been the most cost-efficient and expeditious way to identify the general contractor without further discovery. Plaintiff ultimately never filed this request because the Court intervened and ordered Bainbridge I to identify the general contractor without the need for formal discovery. *See* ECF No. 19.

Plaintiff is entitled to fees for the unfiled motion if it was reasonable to prepare it at the time the work was done. In considering whether attorneys' fees for the unfiled motion is reasonable, "[a] district court should consider in light of the entire record whether a reasonable attorney with his client's interests in mind would have worked on the unfiled motion." *See Roberts v. City of Honolulu*, 938 F.3d 1020, 1026 (9th Cir. 2019). Here, the work was necessary because Bainbridge I refused to identify the general contractor, and Plaintiff's own investigative efforts had not been entirely successful. Plaintiff needed to join the general contractor because the L&R Defendants had defaulted and if the general was not joined as a defendant, the statute of limitations would eventually expire and Plaintiff's only recourse to recover his wages would be to pursue the

the L&R Defendants, who he believes are undercapitalized. So, Plaintiff pursued every avenue available to him to obtain the necessary information so he could join the general contractor. Accordingly, the fees for this work, which are modest, should be awarded.

### d.      Case Management – 11.6 Hours - $3,948.00

Plaintiff seeks compensation for 11.6 hours (out of a total of 13.5 spent) for work related to general case management. Ex. A. The work done in this category includes those tasks which are necessary in every civil case to advance the litigation and adhere to the deadlines and directives of the Court. In this case, the work included, but was not limited to, ensuring service of the summons and compliance with the requirements of Federal Rule 4 regarding returns of service, reviewing the Court's orders and complying with them, preparing the initial report to the Court, conferring about the matters identified in Local Rule 16.3 and the Federal Rules, communicating with opposing counsel about procedural and logistical matters related to the case, monitoring deadlines, preparing notices of appearance and a dismissal of one of the defendants, and speaking to the Plaintiff to apprise him about the progress of the case, so that he remains informed at all times. Ex. A. A large part of the work was performed by paralegals at the Firm or associate attorneys (Jason Mannsman and Andrew Balashov) whose billing rates are lower than Plaintiff's more senior counsel. *See* Ex. A. Because the work in this category was necessary to the successful resolution of this case and was performed in an efficient way to minimize the overall amount of attorneys' fees incurred, the Court should award all of the time sought.

### e.      Settlement – 20.9 Hours - $9,838.50

Plaintiff seeks 20.9 hours (out of a total of 23.6 expended) for work done in connection with Plaintiff's successful partial settlement of his claims with Bainbridge II. This was not a straightforward settlement and the Parties had to overcome several novel issues to make the

settlement work in this case. Initially, Bainbridge II was not receptive to a partial settlement with Plaintiff and the Parties engaged in several rounds of preliminary negotiations before they were able to make any significant progress. Ex. C ¶ 9. As part of this process, Plaintiff prepared a formal settlement demand which Bainbridge II reviewed before the Parties conferred. Ex. A. The Parties then had several conferences with the Court regarding settlement and how to potentially structure a settlement deal that would be agreeable to all involved. *Id*. The first conference took place before the Honorable Magistrate Judge Simms on December 18, 2020. Ex. A. At the conclusion of the conference, the Parties agree to seek formal mediation and to attend a settlement conference. *Id*. Plaintiff then began to prepare for the settlement conference. Including preparing the *ex-parte* mediation statement and meeting with counsel in advance of the mediation to prepare. On February 19, 2021, the Parties attended the settlement conference with Judge Simms and reached a tentative agreement. Ex. A. Focus then turned to preparing a mutually acceptable settlement agreement and several drafts were circulated between the Parties before everyone was able to agree on a final draft. *Id*.; Ex. C ¶ 9.

The agreement contained a confidentiality provision, which soon posed a problem which the Parties had to address. The Court could potentially require Plaintiff to seek approval of the settlement, which would require him to publicly disclose its confidential terms. Thus, language had to be drafted and including in the agreement to deal with what would happen if approval was ultimately required. Ex. C ¶ 9. The Parties communicated by email and telephone on an ongoing basis for several weeks while they worked on language that was satisfactory to both sides. *See* Ex. A. Once, the agreement was finalized, Ms. Aguilar, the Firm's Spanish-speaking paralegal, translated the agreement for Plaintiff and made sure he understood its terms and had an opportunity to ask his lead counsel any clarifying questions before signing. Ex. A. The Parties then appeared

before the Court again on April 19, 2021, to discuss the settlement and how Plaintiff would proceed against the L&R Defendants, in connection with his request for default judgment, given the confidentiality provision of Plaintiff's settlement with Bainbridge II. Ex. A. With the Court's assistance, the Parties were able to devise a way to move forward in a manner that would protect the interest of Bainbridge II without compromising Plaintiff's ability to pursue his claims against the L&R Defendants. *Id*. A final conference was held with the Court on May 19, 2021. Ex. A.

All the time spent, for which Plaintiff seeks compensation, was necessary to enable Plaintiff to achieve a partial settlement of his claims, while preserving his rights to proceed against the L&R Defendants for the remainder of his damages and attorneys' fees and costs. The work was done in an efficient manner, with any towards minimizing the amount of attorney time spent. For this reason, many lower-level tasks were delegated to paralegals at the Firm, and specifically Maria Aguilar, or the Firm's associate attorney, Andrew Balashov. Ex. A. Thus, the full amount of time should be awarded.

**f.      Motion to Dismiss – 1.6 Hours - $945.00**

Plaintiff seeks 1.6 hours (out of a total of 2 expended) in connection with the motion to dismiss filed by Bainbridge I. *See* Ex. A. The work was limited to reviewing the Defendant's motion (ECF No. 12), and then preparing for the hearing before the Court on November 9, 2020, to discuss the merits of the motion. Ex. A. The Plaintiff spent .4 hours preparing a correspondence in response to the Defendant's motion (and their subsequent correspondence to the Court regarding the motion at ECF No. 15) but it was not filed as the matter was resolved by the Court at a hearing. Plaintiff is not seeking attorneys' fees for this time.

g. **Motion for Default Judgment – 5.3 Hours - $1,855.00**

Plaintiff seeks attorneys' fees for 5.3 hours spent drafting the Plaintiff's motion for default judgment against the L&R Defendants. ECF No. 53. The motion was drafted by associate attorney Andrew Balashov, who was most familiar with the facts of the case and in the best position to draft the motion quickly and efficiently. The motion was ultimately granted. ECF No. 60. Because Plaintiff was successful on the motion, he is entitled to all the attorneys' fees sought in this category.

h. **Interpretation – 8.5 Hours - $1,530.00**

Plaintiff speaks only Spanish and required the assistance of Maria Aguilar, Plaintiff's bi-lingual paralegal, to interpret during meetings with counsel. Ex. B ¶18. But for the services rendered by the Ms. Aguilar in this case, the Firm would likely not have been able to undertake representation and achieve the result it did. *Id*. In addition to interpreting during meetings between Plaintiff and counsel, Ms. Aguilar also translated the settlement agreement for the Plaintiff. *Id*. Ms. Aguilar's qualifications are more particularly set forth in her affidavit, which is attached hereto as Ex. G. Plaintiff is entitled to compensation for the services of an interpreter which were necessary during representation. *See Sai Qin Chen v. E. Mkt. Rest., Inc.*, 13 CIV. 3902 (HBP), 2018 WL 3970894, at *5 (S.D.N.Y. Aug. 20, 2018) (awarding $6,530.00 in interpreter fees to the prevailing party in a FLSA case).

i. **Motion for Attorneys' Fees and Costs – 9.9 Hours - $4,192.00**

Plaintiff's counsel is seeking compensation for 9.9 hours (out of a total of 15.9 spent) spent drafting the Plaintiff's Motion for Attorney's Fees and Costs and supporting exhibits. The work performed included not only drafting the motion and supporting documentation, including three separate affidavits (*see* Exhibits B, C and D), and undertaking a systematic review of the billing

records, categorizing the individual entries, and exercising billing judgment to identify and write off duplicative, redundant, or erroneous billing entries. *See* Ex. A; Ex. C ¶7. The time spent preparing the fee petition is compensable. *Kabore v. Anchor Staffing, Inc.*, No. L-10-3204, 2012 U.S. Dist. LEXIS 149761, at *15 (D. Md. 2012) (" … counsel are entitled to receive reasonable attorney's fees for work related to a fee petition."). Accordingly, the full amount of time in this category should be awarded.

### 2.   The Novelty and Difficulty of the Questions Raised.

While this case did not present any truly novel or difficult questions, it nonetheless involves constantly developing standards under both Maryland law and federal law, which Plaintiff's counsel had to research to stay abreast of.

### 3.   Skill Required to Properly Perform the Legal Services Rendered.

The skill and competence required of Plaintiff's counsel is, at a minimum, the ordinary skill and competence required of experienced wage and hour litigation attorneys. Only a skilled professional can gauge what measure and extent of service is reasonable for any aspect of representation and is able to control the expenditure of time and money to remain commensurate with, and proportional to, the needs of the case and the Plaintiff's objectives in bringing the suit. This case required an attorney familiar with and experienced in issues related to the FLSA and MWHL and MWPCL, who could quickly ascertain the veracity of the Plaintiff's claim and her resulting damages, and then litigate the matter to a successful conclusion.

### 4.   Opportunity Costs in Pressing the Instant Litigation.

While Plaintiff's counsel did not forego taking any cases to work on this case, there were nonetheless opportunity costs. Undersigned's Firm also handles wage and hour cases in the District of Columbia where Plaintiff's counsel is reimbursed at the LSI *Laffey* Matrix rates. Ex. B ¶33. LSI

rates are much higher than the Firm's normal and customary rates sought herein. *Id*. As a result, there is an opportunity cost to the Firm for pursuing wage and hour cases in Maryland as opposed to wage and hour cases in the District of Columbia. *Id*.

      **5.  The Customary Fee for Like Work.**

In January 2020, Plaintiff's counsel was awarded attorneys' fees at the Firm's normal and customary rates, which are near the rates they seek herein, in a FLSA case in the Greenbelt Division, in a default case. *See Quijano, et al., v. Mizpah Building Services, LLC, et al.*, Case No. 19-00038-PJM. In that case, Plaintiffs' counsel Omar Vincent Melehy was awarded an hourly rate of $500.00 and $600.00, depending on when the time was incurred; Suvita Melehy was awarded an hourly rate of $450.00 and $550.00, and Andrew Balashov was awarded an hourly rate of $285.00 and $325.00. The firm was awarded rates of $155.00 and $175.00 for paralegals and law clerks. *See* ECF Nos. 13-4, and 15 in Case No. 19-00038-PJM.

In *Boyd, et al. v. SFS Communications, LLC et al*., Case No. 15-03068-PJM, a Rule 23 class action case brought under the Maryland Wage and Hour Law and a Collective Action brought under the Fair Labor Standards Act, the *Boyd* plaintiffs prevailed, and their Counsel sought attorneys' fees at current market rates for each of the three law firms that worked on the case, including Melehy & Associates LLC. *See* Case No. 15-03068-PJM, Memorandum at ECF No. 195-1. Specifically, Omar Melehy was awarded $625.00 per hour, Andrew Balashov was awarded $350.00 per hour and law clerks and paralegals were awarded $180.00 per hour. *See* Case No. 15-03068-PJM, ECF No. 195-2. And while the Defendants in Boyd did not oppose the motion for attorney's fees, on August 24, 2021, Judge Messitte awarded the rates sought, concluding that "the hourly rates of Class Counsel are reasonable for this class and collective action case." Case No. 15-03068-PJM, ECF No. 197.

### 6. Expectations at the Outset of Litigation.

Plaintiff's counsel took this case on a pure contingency basis, expecting to be paid upon the conclusion of the case either through a negotiated settlement, or by petitioning this Court for a fee award. Ex. B ¶ 26; Retainer Agreement, Ex. E. In doing so, Plaintiff's counsel accepted all the risk associated with a pure contingency agreement including the possibility that they would have to litigate this case, and advance costs, for an extended period without any compensation. *Id*.

Under this agreement, Plaintiff's counsel would not be able to collect anything for their time unless they prevailed on Plaintiff's claims. Ex. B ¶ 26; Ex. E. Awarding the requested fees is therefore important to encourage other lawyers, like Plaintiff's counsel, to take similar cases under the risk of obtaining no compensation should the litigation prove unsuccessful. Indeed, encouragement of this kind is the reason federal and state wage statutes include fee-shifting provisions. *See Quaratino v. Tiffany & Co.*, 166 F.3d 422, 426 (2d Cir. 1999) (the public interest promoted by civil rights statutes "is perhaps most meaningfully served by the day-to-day private enforcement of these rights, which secures compliance and deters future violations."); *see also Wales v. Jack M. Berry, Inc.,* 192 F.Supp.2d 1313, 1327 (M.D.Fla. 2001) ("FLSA is an important piece of social legislation. Accordingly, the public derives a benefit from the plaintiffs' recovery on their FLSA claims").

### 7. Time Limitations Imposed by the Client or the Circumstances.

The potential for any wage litigation defendant to argue the statute of limitations bars in whole in part a plaintiff's claim places an importance on moving as quickly as possible to develop and file the case. Additionally, promptness is particularly important in the field of employment law to ensure the preservation of records supporting an employee's claim.

**8. The Amount in Controversy and the Results Obtained.**

Plaintiff's damages in this case were not insignificant – and the total amount recovered, with liquidated damages, was $9,234.00, plus reasonable attorneys' fees and costs. ECF No. 60. This is a tremendous result for the Plaintiff, as it represents all of Plaintiff's unpaid wages and the maximum liquidated damages he is entitled to. *See* ECF No. 1 (as amended). Furthermore, the Plaintiff's damages are exclusive of attorney's fees and costs, which will be awarded separately by the Court. Overall, this represents a tremendous victory for the Plaintiff.

**9. The Experience, Reputation and Ability of Counsel.**

As explained in more detail below, Plaintiff's counsel Omar Vincent Melehy, and the other professionals at Melehy & Associates LLC who worked on this case, have significant experience, an excellent reputation, and a high level of skill. *See* Ex. B ¶¶ 1-22; Ex. C ¶¶ 9-13; Ex. D ¶¶11-14; Ex. G ¶¶1-12.

**10. Undesirability of the Case.**

The contingent nature of the case and the fact that a wage-and-hour case such as this can be met with staunch opposition from a usually well-financed employer-defendant, makes cases such as this undesirable to many attorneys. Moreover, this is (partly) a default case and despite obtaining a judgment, Plaintiff and counsel now face the uncertainty of trying to collect the remaining judgment from uncooperative and undercapitalized defendants and will likely need to spend additional time and resources on collection efforts, which may in the end prove unsuccessful.

**11. Nature and Length of the Attorney-Client Relationship.**

Prior to undertaking the representation in this case, the Firm has not previously represented Plaintiff in any capacity.

**12.  Attorney's Fees Awards in Similar Cases.**

Plaintiff seeks fees at the Firm's current normal and customary rates ($625.00 per hour for Omar Vincent Melehy, $575.00 per hour for Suvita Melehy, $350.00 per hour for Andrew Balashov, and $180.00 per hour for paralegals and paraprofessionals) which are reasonable and reflect the market rates for employment litigation attorneys handling cases such as this in this District. Given the experience of the professionals at Melehy & Associates and their reputation and skill, they are deserving of such rates. *See* Ex. B ¶¶ 1-22; Ex. C ¶¶ 9-13; Ex. D ¶¶11-14; Ex. G ¶¶1-12. *See also* Paragraph 5, above ("The Customary Fee for Like Work").

**13.     The Factors in Totality.**

Looking at the factors in totality, they support Plaintiff's entitlement to an award of attorney's fees equivalent to the Lodestar figure which is derived by multiplying the hours reasonably expended by the rates at which reimbursement is sought. Employment law attorney Michal Shinnar, Esquire, also opines that upon review of the time records in this case, the time spent is reasonable. *See* Ex. D ¶14.

Furthermore, no reduction is warranted or appropriate merely because the amount of attorney's fees and costs exceeds Plaintiff's total recovery. Strict application of any proportionality rule is inimical to the public policy interests that are served by fee-shifting statutes such as the FLSA, the MWHL and the MWPCL. The Supreme Court has rejected such a proportionality requirement. *See City of Riverside v. Rivera*, 477 U.S. 561, 574 (1986) (affirming a $245,000.00 fee award which was more than seven times the $33,000 recovery). The *Riverside* Court concluded that "[a] rule of proportionality would make it difficult, if not impossible, for individuals with meritorious civil rights claims but relatively small potential damages to obtain redress from the

courts, and would be totally inconsistent with Congress' purpose of ensuring sufficiently vigorous enforcement of civil rights." *Id.* at 561. Precedent in this District is in accord. *See Jones v. Southpeak Interactive Corp. of Del.*, 777 F.3d 658, 676 (4th Cir. 2015) ("A court may consider whether a fee award seems reasonable in light of the amount of damages awarded. However, 'a substantial disproportionality between a fee award and a verdict, standing alone, may not justify a reduction in attorney's fees"); *Salinas v. Commercial Interiors, Inc.,* 8:12-CV-1973-PWG, 2018 WL 2752553, at *7 (D. Md. 2018) ("This proportionality argument must fail because in FLSA cases, attorney's fees awards are frequently disproportionate to the amount recovered"); *Reyes v. Clime*, No. PWG-14-1908, 2015 WL 3644639, at *4 (D. Md. 2015) (noting that disproportionality is common in FLSA actions, "where vulnerable plaintiffs may be vindicating important rights that entitle them to relatively modest compensation."); *Dorsey v. TGT Consulting, LLC*, No. CIV. CCB-10-92, 2014 WL 458999, at *2 (D. Md. 2014) (awarding $407,270 in attorneys' fees, plus $10,410 for the reply to the fee petition, in a case involving FLSA and MWHL violations that resulted in $240,000.00 settlement).

## III.   PLAINTIFF IS ENTITLED TO REIMBURSEMENT AT THE FIRM'S CURRRENT NORMAL AND CUSTOMARY RATES, WHICH ARE REASONABLE.

### A.   GOVERNING LAW.

Reasonable hourly rates are in line with "those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 890 n.11 (1984). The Supreme Court has opined, in the context of cases brought under Title VII and other fee shifting statutes such as the FLSA, that "[a]s nearly as possible, market standards should prevail, for that is the best way of ensuring that competent counsel will be available to all persons . . . " and that "this means that judges awarding fees must make certain

that attorneys are paid the full value that their efforts would receive on the open market in non-civil-rights cases." *Hensley v. Eckerhart*, 461 U.S. 424, 447 (1983). "A reasonable attorney's fee is one that is adequate to a attract competent counsel, but . . . [that does] not produce windfalls to attorneys." *Blum* 465 U.S. at 893-94.

This Court has generally relied upon as "presumptively reasonable" the rates set forth in Appendix B of the Local Rules of this Court. *See Nat'l Elec. Benefit Fund v. Eley Elec. Contractors*, LLC, CV PX-17-3502, 2018 WL 3458316, at *3 (D. Md. 2018). However, these rates are not mandatory or binding on the Court but are meant to provide "guidance to lawyers and judges when requesting, challenging and awarding fees." *Client Network Services, Inc. v. Smith*, 2018 WL4019767, *3 (M. Md. 2018). The language of the Appendix B expressly contemplates that the rates set forth there are subject to adjustment if, for example, there is "an increase in the cost of legal services since the adoption of the guidelines." *See* Local Rules, Appendix B. This language in Appendix B is applicable now as the Appendix B rates have not been updated since July 2014, more than 6 years ago. *See Morataya v. Nancy's Kitchen of Silver Spring, Inc*., GJH-13-01888, 2016 WL 6634856, at *3 n.2 (D. Md. 2016).

Higher rates are not without precedent.  In fact, this Court has previously awarded rates which are higher than the Appendix B rates, finding that they are reasonable. *See De Simone v. VSL Pharmaceuticals, Inc*., CV TDC-15-1356, 2018 WL 6680922, at *4 (D. Md. 2018); *Laborers' Dist. Council Pension & Disability Tr. Fund No. 2 v. Parkinson Const. Co.*, No. WDQ-13-0294, 2014 WL 1343784, at *4 (D. Md. 2014); *Laborers' District Council Pension and Disability Trust Fund No. 2, et al. v. E.G.S., Inc.*, No. WDQ–09–3174, Paper No. 16 (D. Md. 2010); *Plasterers' Local Union No. 96 Pension Plan v. Perry*, 711 F.Supp.2d 472, 2010 WL 686694, at *3 (D.Md.2010); *CCA Fin., LLC v. Kulukurgiotis*, No. CIV. WDQ-14-3282, 2014 WL 6388105, at

*3 (D. Md. 2014); *Duvall v. O'Malley, No*. CV ELH-94-2541, 2016 WL 3523682, at *14 (D.Md. 2016); *Life Techs. Corp. v. Life Techs. Corp*., No. RWT 10CV3527, 2012 WL 4748080, at *2 (D. Md. 2012).

A party is free to seek a fee award at rates other than those set forth in Appendix B, provided that the party establishes that the rates sought are the market rates in the locality where the services were performed. In seeking fees, the party may provide, and the court may rely upon, affidavits from other attorneys attesting to the reasonableness of the hourly rates, or the prevailing market rates. *See Beyond Sys., Inc. v. World Ave. USA, LLC*, No. PJM-08-921, 2011 WL 3419565 at *3 (D. Md. 2011). Where a party produces "sufficient evidence to establish that the rates sought . . . coincide with the then prevailing market rate, such rates are normally deemed admissible by the court." *Nautical Girl, LLC v. Polaris Investments, Ltd.,* ELH-10-3564, 2011 WL 5881782, at *4 (D. Md. 2011), *as amended* (Nov. 28, 2011), *report and recommendation adopted as modified*, CIV.A. ELH-10-3564, 2011 WL 6411082 (D. Md. 2011).

### B.    THE FIRM'S NORMAL AND CUSTOMARY RATES ARE REASONABLE.

Plaintiff seeks an award of attorney's fees at the firm's current normal and customary rates:

| | |
|---|---|
| Omar Vincent Melehy (Attorney) | $625.00 per hour; |
| Suvita Melehy (Attorney) | $575.00 per hour; |
| Andrew Balashov (Associate Attorney) | $350.00 per hour; |
| Jason Mannsman (Associate Attorney) | $350.00 per hour; and |
| Paralegals and Paraprofessionals | $180.00 per hour. |

Current market rates must be awarded to compensate for the time value of money[2] and

---

[2] In *Johannssen v. District No. 1-Pacific Coast Dist, MEBA Pension Plan*, 292 F.3d 159 (4th Cir. 2002) the time that had elapsed between the filing of the law suit and the trial court's fee award was five years. *Id*. at 167. The trial court declined to award the prevailing party current

because the retainer agreement between Plaintiff and the Firm contemplates an award of attorneys' fees at the current rates in effect at the time of judgment. *Missouri v. Jenkins*, 491 U.S. 274, 283 (1989); Retainer Agreement, Ex. E. "'[C]ourts have regularly recognized the delay factor, either by basing the award on current rates or by adjusting the fee based on historical rates to reflect its present value.'" *Id*. at 282 (quoting *Pennsylvania v. Delaware Valley Citizens' Council*, 483 U.S. 711, 716 (1987)). *See also Perdue v. Kenny A*., 559 U.S. at 556 (same).

The Firm's current normal and customary rates are consistent with the rates charged in this locality by other employment litigation attorneys, including those practicing wage-and-hour-law in the geographic area in Maryland, where this Court sits. *See* Aff. of Michal Shinnar Esquire. Ex. D ¶ 12-14. Ms. Shinnar, Senior Counsel at Joseph, Greenwald and Laake, PA, is familiar with the skills of the fee applicants in this case and with employment law litigation generally in this locality. *Id*. ¶¶ 1-10. Ms. Shinnar can verify that the rates sought by Plaintiff's counsel in this case reflect the prevailing market rates for employment law attorneys practicing in this District. *Id*. ¶¶11-12.

Plaintiff's counsel is well deserving of the Firm's normal and customary rates based on their skill, experience, and reputation in the field of employment law.  Plaintiff's lead counsel Mr. Melehy currently has 34 years of litigation experience, and one-year of additional experience clerking for a Judge on the Maryland Court of Appeals, Maryland's highest state court.  Ex. B, ¶¶ 1–16.  Mr. Melehy (1) has tried 19 cases to juries, (2) has been lead counsel in 30 bench trials, five of which were wage and hour cases, (3) has conducted approximately 19 administrative evidentiary hearings in employment cases where he was lead counsel, (4) has been lead counsel in approximately 30 appeals in state or federal court, and has been involved in three class/collective

---

market rates and the Fourth Circuit reversed. *Id*. at 180. It noted that "consideration of the effect on the value of the fee is mandatory as part of a consideration of what is reasonably compensatory." *Id*.

actions, two of which were wage cases pending before this Court. *Id.* ¶¶ 10-15. Mr. Melehy's reputation as a skilled litigator, trial lawyer, and plaintiff's employment lawyer is on par with the high-quality representation that he demonstrated during the present litigation and is consistent with his vast experience. Mr. Melehy has achieved an "AV" rating – the highest rating available – from Martindale-Hubbell. *Id.* ¶ 16. This AV rating is directly related to his reputation as a highly skilled litigator because attorneys and judges provide the reviews that form the basis of the AV rating. *Id.* Mr. Melehy is also the current president of the Metropolitan Washington Employment Lawyers Association. *Id.* ¶ 8.

Plaintiff's counsel Suvita Melehy is the Firm's managing attorney. Ex. C ¶1. She has practiced in the area of employment law for 24 years and specifically in the area of wage and hour law since 2000. *Id.* C 4. In her career, Ms. Melehy has handled approximately 47 bench trials or evidentiary hearings in state and federal court. *Id.* ¶ 4. Ms. Melehy is also responsible for managing all aspects of the Firm's discovery process. *Id.* ¶ 5. She has extensive training and experience in the field of e-Discovery, and in June 2018, she completed a rigorous 6-day e-Discovery training course at Georgetown University. *Id.* In her career, she has taken more than 65 depositions and argued numerous discovery motions and disputes before state and federal courts. *Id.*

The other professionals at Melehy & Associates LLC who worked on this case are no less deserving of the rates sought. *See* Ex. B ¶¶17-22; Ex. D ¶ 13; Ex. G ¶¶1-11.

Accordingly, the Plaintiff should be awarded attorneys' fees and the Firm's current normal and customary rates.

## IV.    THE PLAINTIFF IS ENTITLED TO REIMBURSMENT FOR ALL COSTS.

As the prevailing party, Plaintiff is entitled to recover costs in the amount of $911.58. All out-of-pocket costs incurred in this case have been paid by Melehy & Associates LLC. *See* Ex. B

¶32. The Court has discretion to determine the costs that will be taxed against losing defendants in FLSA cases pursuant to 29 U.S.C. § 216(b). *Roy v. County of Lexington, South Carolina,* 141 F.3d 533, 549 (4th Cir.1998). In the context of fee-shifting under other civil rights statutes, as authorized by 42 U.S.C. § 1988, the Fourth Circuit has included, in the costs that may be charged to losing defendants, "those reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services." *Spell v. McDaniel*, 852 F.2d 762, 771 (4th Cir.1988) (citing *Northcross v. Board of Educ. of Memphis City Schools*, 611 F.2d 624, 639 (6th Cir.1979)). Examples of types of costs that have been charged to losing defendants include travel, process server expense, depositions and transcripts, computer research, postage, court costs, and photocopying. *Vaughns v. Board of Educ. of Prince George's County*, 598 F.Supp. 1262, 1289–90 (D.Md.1984). Plaintiff seeks the following costs:

Westlaw Legal Research Database Charges. Plaintiff is entitled to recover Westlaw fees incurred while conducting legal research during litigation. *See Andrade v. Aerotek, Inc.*, 852 F. Supp. 2d 637, 645 (D. Md. 2012)) (awarding computer research charges).

Photocopies. Plaintiff is entitled to recovery reasonable photocopy expenses. *Singleton v. Domino's Pizza, LLC*, 976 F. Supp. 2d 665, 689 (D. Md. 2013) (holding that photocopying costs constitute reasonable litigation-related expenses that can be awarded to prevailing plaintiffs).

Filing Fee. Plaintiff seeks reimbursement of the initial $400.00 fee to file the instant case. This expense is a compensable Court cost as Plaintiff is the prevailing party.

PACER Charges. Plaintiff is entitled to reimbursement of the reasonable PACER charges that have been incurred in connection with the case. These charges are compensable court costs. *See Garza v. Mitchell Ruhenstein & Assocs.*, P.C., No. GJH-15-1572, 2016 WL 7468039, at *6 (D. Md. Dec. 27, 2016) (awarding PACER charges).

24

<u>Postage</u>. Plaintiff is entitled to recover his postage expenses. These expenses were largely incurred in serving the Defendants by certified mail. They are nominal and cheaper than hiring a private process server, and thus should be awarded.

In support of his request for reimbursement of costs and expenses, Plaintiff attaches an itemized spreadsheet detailing the dates each expense was incurred, a description of the expense, along the receipts in the case of out-of-pocket expenses. *See* Ex. F. The claimed costs and expenses are reasonable, documented with enough detail by the Plaintiff and supported with a verified statement from Omar Vincent Melehy discussing how the costs were tracked in this case (*see* Ex. B ¶¶ 29-32). Thus, Plaintiff is entitled to recover $911.58, the full amount of costs and expenses sought in connection with his petition.

## CONCLUSION

Because the requested fees and costs are reasonable, Plaintiff asks that this Court grant this motion and reduce its award to a judgment against the L&R Defendants and in favor of Plaintiff in the total amount of $28,674.58, representing attorneys' fees of $27,763.00 and costs of $911.58, less any amounts for attorney's fees and costs already received by Plaintiff from Bainbridge II.

Respectfully Submitted,

/s/   Andrew Balashov
Maryland Bar No. 19715
MELEHY & ASSOCIATES, LLC
8403 Colesville Rd., Suite 610
Silver Spring, MD 20910
Telephone: (301) 587-6364
Facsimile:     (301) 587-6308
Email: abalashov@melehylaw.com

*Attorneys for Plaintiff*

25